51 CCPA

**Application of Alfred H. FREE.**
**Patent Appeal No. 7175.**

United States Court of Customs
and Patent Appeals.
April 9, 1964.

Brown, Jackson, Boettcher & Dienner, Chicago, Ill. (Alvin J. Ragan and Bruno J. Verbeck, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the examin-

er's rejection of claims 13 and 14 of appellant's application serial No. 422,977, filed April 13, 1954, for "Diagnostic Composition." One claim has been allowed.

Appellant's application discloses a test means and method for detecting glucose in urine. The test depends upon a change in the color of a pH indicator, e. g., methyl orange or congo red, due to conversion of glucose to gluconic acid by an enzyme, glucose-oxidase, when that enzyme is contacted with glucose in the presence of oxygen. One form of test means comprises a bibulous (absorbent) mat of paper, impregnated with glucose-oxidase. The paper is used by moistening it with urine in the presence of oxygen, or an oxygen-supplying compound, and the indicator.

The appealed claims are:

"13. A method for detecting the presence of glucose in urine which comprises contacting the urine which is to be tested with a bibulous material which has been impregnated with a glucose-free composition comprising glucose-oxidase and an indicator material which undergoes a color change induced by a reaction product formed when said enzyme is contacted with glucose in the presence of oxygen.

"14. A test means for detecting glucose in urine which comprises a bibulous material which has been impregnated with a glucose-free composition comprising glucose-oxidase and an indicator material which undergoes a color reaction induced by a reaction product formed when said enzyme is contacted with glucose in the presence of oxygen."

The references relied on are:

Clark    2,671,028    March 2, 1954
"Annalen der Chemie," Vol. 541 (1939), pages 141 and 142.

The Annalen reference discloses a solution consisting of the enzyme glucose-oxidase, a phosphate buffer, a redox indicator dye, and glucose. Such a solution, when subjected to what is designated as "The Thunberg experiments," discolored within various time intervals ranging from 11 minutes to more than 1400 minutes, depending on the character of the redox indicator dye, i. e., oxidation-reduction indicator dye, used. It is further disclosed that control solutions, i. e. solutions without the glucose, were not discolored even after 24 hours.

The Clark reference relates to a method and means for indicating spoilage or deterioration of food or biological products, or non-biological products that deteriorate in a way similar to biological products under the influence of time and warmth. According to Clark's method, there is included in, or attached to, the package of the product an indicator which contains an enzyme and a substrate selected to result in a permanent visible change in color when the package has been subjected to conditions resulting in a permanent degree of deterioration of the product.

The examiner rejected claims 13 and 14 as unpatentable over the Annalen reference in view of Clark, stating that:

" * * * The position is taken that the Annalen reference would show one skilled in the art that a composition comprising glucose oxidase enzyme, a phosphate buffer maintaining a pH of 7.0 and a redox indicator would effect a redox indicator color change in the presence of glucose. While the reference does not teach adding to an unknown solution the enzyme-buffer-indicator as a glucose free composite so as to detect the presence of glucose, this would be apparent, because the control shows that no reaction will occur in the presence of the enzyme-buffer-indicator mixture in the absence of glucose. * * * The Clark patent discloses that impregnating a bibulous carrier, such as blotting paper, with a buffered enzyme-indicator composition is well known to the art."

The examiner concluded that to impregnate the control composition of the An-

nalen reference onto a bibulous carrier would not involve "invention," apparently meaning that it would be obvious under 35 U.S.C. § 103.

The board, in sustaining the examiner's rejection, again referred to the control composition in Annalen and considered that this control composition would anticipate claim 14 except for the carrier, the use of which the board believed obvious in view of Clark.

With respect to appellant's method of using the composition of claim 14 as defined by claim 13, the board stated:

"* * * while this [the method] is not suggested by Annalen der Chemie, the art is replete with various tests for glucose in urine which depend upon color changes due either to reaction with the glucose or its conversion products, including biological conversion products. This is amply confirmed by the 1940 Merck Index, made of record by appellant, showing some 54 tests for glucose most of which rely upon color changes in indicators. The test composition in the Clark patent further depends upon a color change due to a reaction of the same general character as is involved in appellant's test although not used for the purpose of detecting glucose."

Appellant argues that the product of claim 14 is not taught or suggested by the combined teachings of the Annalen reference and the Clark patent. Appellant urges that the redox indicator dyes of the control composition of Annalen are different and function in a different way from the indicator material recited in claim 14. Appellant contends that Annalen does not teach or suggest a composition having utility in testing for glucose in urine. Appellant argues that claim 13 embodies a new concept in testing for glucose in urine. It is urged that the method of claim 13, "for the first time in the many scores of years since the presence or absence of glucose in urine was first understood to provide an important indication of the state of health of a patient," enables the test for glucose to be made simply by contacting a dry, prepared bibulous test unit with urine, and observing the color change therein which takes place when glucose is present in the urine.

Concerning the Merck Index referred to by the board, appellant "freely admits" that many of the tests for glucose referred to in that Merck Index employ color changes to show the presence of glucose, but contends that the mere fact that there are tests for glucose in the prior art involving color changes would not make it possible to use the "control" composition of the Annalen reference in the manner defined in claim 13.

Appellant, referring to an affidavit and exhibits attached thereto made of record, argues that the product of claim 14 and method of claim 13 have achieved broad acceptance and have enjoyed, and are continuing to enjoy, great commercial success.

We are faced with one issue here; whether under 35 U.S.C. § 103 the differences between appellant's method and test means and the prior art are such that appellant's invention as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which appellant's invention pertains.

■■ Whether a combination of references negatives patentability depends solely upon what the references would reasonably and realistically teach those of ordinary skill in the art. A comparison of the prior art before us and appellant's invention convinces us that appellant's invention is not obvious under 35 U.S.C. § 103.

As appellant points out, an analysis of claim 14 shows the following:

"1. Calls for a test means for detecting glucose in urine.

"2. Requires the test means to comprise a bibulous material which has been impregnated with a glucose-free composition com-

prising glucose-oxidase and an indicator.

"3. Requires the indicator to be one which undergoes a color reaction induced by a reaction product formed when the glucose-oxidase is contacted with glucose in the presence of oxygen."

Appellant's test requires the presence of oxygen and an indicator material. The necessity of oxygen is apparent from the application which states:

"*Since a certain amount of oxygen is necessary to carry out the reaction involved,* an oxygen-supplying material, like strontium peroxide, barium peroxide, sodium pyrophosphate peroxide, * * * and similar materials may be added. The oxygen needed for the reaction involved might also be supplied by the addition to the tablet of such oxygen-containing compounds as the iodates and related compounds." [Emphasis ours.]

On the other hand, the portion of the Annalen reference, specifically relied on by the examiner, is directed to "replacing oxygen" by an indicator material. For example, the Annalen reference states:

"B. Acceptor-Specificity

"Using crude enzyme [glucose-oxidase] we did not succeed *in replacing oxygen by other acceptors* than quinone and indophenol. When using purified enzyme the choice of acceptors is considerably larger, comprising among others also cytochrome C, besides various redox-indicators." [Emphasis ours.]

Under the same Section B, a series of "Thunberg experiments"[1] with a solution of the enzyme glucose-oxidase, a phosphate buffer solution, a quinone-like dye solution and a glucose substrate were then carried out. It is pointed out that the time required for the substrates with various dyes to become decolorized ranged from 11 minutes to more than 1400 minutes and that controls without the glucose substrate "were not discolored even after 24 hours."

We do not think that a test means for detecting glucose in urine comprising glucose-oxidase and an indicator material which undergoes a color reaction induced by a reaction product formed when said enzyme is contacted with glucose *in the presence of oxygen,* nor a method for testing the glucose in urine employing such a test means would be obvious from that teaching in Annalen which appears to be directed to "replacing oxygen" by various indicators in the determination of the activity of the enzyme glucose-oxidase.

Annalen also does not suggest a bibulous material impregnated with the "control." While it is true that the Clark patent mentions impregnating blotting paper with a composition comprising an indicator dye, an enzyme and a buffered substrate, we agree with appellant that the enzymatic composition of the Clark patent is entirely different from the composition in the Annalen reference. In the Clark patent, the enzymatic composition exhibits a change in color when the composition has been subjected to storage conditions likely to have substantially deteriorated or degraded the contents of a package to which the enzymatic composition is attached. In other words, the enzymatic composition of the Clark patent includes within itself all ingredients for producing a color reaction, including a substrate for the enzyme. On the other hand, the functioning of appellant's test means depends on it being contacted with an unknown material be-

1. At oral hearing appellant made reference to Manometric Techniques and Tissue Metabolism by Umbreit, Burris, and Stauffer, pp. 105–106 (1949) which describes "Thunberg Techniques" for estimation of dehydrogenase activity. In discussing the results, it is stated that the "reliability of the results obtained by the Thunberg method depends in part upon the efficiency *with which oxygen is removed.*" [Emphasis ours.]

ing tested, i. e. urine with an unknown content of glucose being tested.

Since we do not think that the cited art reasonably and realistically teaches what is being claimed, the decision of the board is reversed.

Reversed.